[Cite as *State v. Pickett*, 2016-Ohio-4593.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :         Case No.   15CA13

    vs.                                 :

TIMOTHY L. PICKETT,                     :         DECISION AND JUDGMENT ENTRY

    Defendant-Appellant. :

_____

APPEARANCES:

George W. Leach, Columbus, Ohio, for Appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Merry M. Saunders, Athens County Assistant Prosecuting Attorney,    Athens, Ohio, for Appellee.

_____

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 6-20-16
ABELE, J.

{¶ 1}   This is an appeal from an Athens County Common Pleas Court judgment of conviction and sentence.   The trial court found Timothy Pickett, defendant below and appellant herein, guilty of (1) aggravated burglary in violation of R.C. 2911.11(A)(1), and (2) complicity to felonious assault in violation of R.C. 2903.11(A)(1) and 2923.03(A)(2).

{¶ 2}   Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ALLOWING JEFF
MCCULLOCH AND MARK DOWDY TO REMAIN PRESENT
IN THE COURT ROOM DURING THE TRIAL AFTER
DEFENSE COUNSEL REQUESTED A SEPARATION OF
WITNESSES PURSUANT TO EVID.R. 615."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED WHEN IT CONVICTED THE
APPELLANT OF AGGRAVATED BURGLARY AND
FELONIOUS ASSAULT AGAINST THE MANIFEST WEIGHT
OF EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

"APPELLANT DID NOT RECEIVE THE EFFECTIVE
ASSISTANCE OF COUNSEL AS GUARANTEED BY THE
SIXTH AMENDMENT TO THE UNITED STATES
CONSTITUTION."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED WHEN IT FAILED TO FIND
THAT AGGRAVATED BURGLARY AND FELONIOUS
ASSAULT WERE ALLIED OFFENSES WHICH WOULD
MERGE FOR SENTENCING PURPOSES."

{¶ 3} On November 12, 2013, appellant and his son, Michael Wright, entered Jeffrey

McCulloch's home, while McCulloch and his friend, Mark Dowdy, were present. The parties

dispute the precise series of events that transpired and the circumstances under which appellant

and Wright entered McCulloch's home. What is not disputed, however, is that Wright stabbed

McCulloch, which caused McCulloch's intestines to protrude.

{¶ 4} On April 28, 2014, an Athens County grand jury returned an indictment that

charged appellant with aggravated burglary and felonious assault. Appellant entered not guilty

pleas.

{¶ 5}   On March 10 and 11, 2015, the trial court held a bench trial.  To start, the state requested the court to allow the two victims, McCulloch and Dowdy, to remain in the courtroom.  Appellant, however, requested that the court prohibit the victims from remaining in the courtroom during the other's testimony.  The court ruled that the victims could remain in the courtroom throughout the trial and that the court would "take into consideration any weight that it might give their testimony, after hearing the testimony of any other individuals in this case."

{¶ 6}   McCulloch testified and explained the November 12, 2013, incident as follows.  Shortly after Dowdy arrived at his home, McCulloch heard a knock on his door.  McCulloch asked who it was, and a voice responded, "John."  McCulloch asked, "John who?"  The voice responded, "Woolett."   McCulloch explained that he knew an individual named John Woolett so he requested Dowdy to open the door.  As soon as Dowdy opened the door, appellant and Wright charged in the door.  Wright had his hand in his pocket and McCulloch "kn[e]w [Wright] had a weapon of some kind."  McCulloch, apparently discerning a threat, "took [Wright] to the ground."  Wright extricated himself from McCulloch's hold and threatened to cut off McCulloch's finger with a pocket knife and also threatened to slit his throat.  McCulloch stated that Wright wanted McCulloch's "money or drugs."   McCulloch refused to cede to Wright's will, and Wright stabbed him.  At that point, appellant stated, "I'm out of here," and both appellant and Wright fled the premises.

{¶ 7}   Dowdy testified and explained the November 12, 2013 incident as follows.  He was visiting McCulloch when they heard a knock on the door.  As soon as Dowdy opened the door, appellant and Wright rushed in and asked where the "money and drugs" were located.  Appellant and Wright stated that they were "there to rob" McCulloch and Dowdy.   McCulloch

grabbed appellant by the throat, then turned his attention to Wright.  Wright and McCulloch fought in the kitchen, while appellant subdued Dowdy in the living area.  Appellant then attempted to help Wright by "tak[ing McCulloch] to the floor."  Dowdy started to get up, and appellant came running back to Dowdy.  Appellant sat on top of him, with a knife in his hand, and stated, "I'll fucking kill ya, where the shit at? [sic]"  McCulloch started gaining "the upper hand" on Wright, so appellant returned to the kitchen to help Wright "rob" McCulloch.  Dowdy grabbed a knife and stated, "now the tables are turned. * * * I feel like killing you fuckers." Appellant ran back towards Dowdy and again subdued him.  During the struggle, appellant apparently stabbed Dowdy's hand with a knife.  After Wright stabbed McCulloch, appellant and Wright ran out of the house.

{¶ 8}   After the state rested, appellant moved for a Crim.R. 29(A) judgment of acquittal and asserted that the state failed to present sufficient evidence to support a felonious assault or aggravated burglary conviction.  Appellant pointed out that (1) the state did not present any evidence that appellant caused McCulloch serious physical harm so as to support the felonious assault conviction, and (2) the state failed to present evidence that he unlawfully entered McCulloch's premises with purpose to commit a theft offense.  The state, however, asserted that sufficient evidence supports a finding that appellant, at a minimum, gained entrance to McCulloch's residence by deception.  The state also argued that sufficient evidence supported a finding that appellant was complicit in causing McCulloch serious physical harm.  The state pointed out that Dowdy testified that appellant helped Wright subdue McCulloch, which led to the stabbing.  The trial court overruled appellant's motion.

{¶ 9}  In his defense, appellant presented testimony from his wife, Carla Pickett.  She stated that she saw appellant and Wright after they had been to McCulloch's house and that both appeared upset.  She noted that appellant had a knife sticking out of his coat pocket.  Carla stated that she had never seen this knife before and that appellant appeared surprised to find it there.

{¶ 10} Appellant offered the following version of the events of November 12, 2013. Appellant needed to pick up some money from an individual named "Jack."  Wright and appellant drove to Jack's house, but Jack was not home.  Wright suggested that while they wait for Jack to return, they visit one of his friends.  Wright drove to McCulloch's trailer.  Appellant became concerned that Wright intended to purchase drugs during this visit, so he accompanied Wright to the door.  Wright knocked on the door.  When the door opened, they both stepped inside.  McCulloch then attacked Wright.  Appellant stated that he tried to help Wright so they could leave, because he did not "know what in the heck is going on."  Dowdy grabbed appellant, and appellant pushed Dowdy to the couch.  Appellant tried to break up the fight between Wright and McCulloch and Dowdy approached Wright with a knife and stated, "I'm going to kill ya." Appellant subdued Dowdy, and then he and Wright left.  Appellant was unaware that McCulloch had been stabbed, and he did not know that Wright had carried a knife into McCulloch's trailer.

{¶ 11} Appellant also denied that either he or Wright claimed to be "John Woolet" when they knocked on McCulloch's door.  He also denied knowing the origin of the knife that he found in his coat pocket later in the evening.  Appellant claimed that when he went to

McCulloch's trailer with Wright, he thought McCulloch was one of Wright's friends. Appellant denied having an intent to harm anyone and claimed that he was only trying to help Wright.

{¶ 12} On March 19, 2015, the trial court orally announced its decision and found appellant guilty of aggravated burglary and complicity to felonious assault. The court explained its findings and noted that McCulloch's and Dowdy's testimony revealed some inconsistencies, but the court did not find them "so * * * different that it * * * leads the Court to a different conclusion." The court stated that it shared appellant's counsel's concerns regarding both victims remaining in the courtroom during the testimony and explained: "I think it makes it * * * certainly suspect at a minimum of what their testifying to by their own recollection as [o]pposed to what they just heard. [sic]" The court considered appellant's assertion that he was a tacit participant in the events, but found evidence to the contrary. The court observed that it had reviewed videotaped surveillance footage of appellant's and Wright's conduct before knocking on McCulloch's door and found that "they did not immediately go to the door upon entering the driveway." The court believed that their conduct showed that they had "preplanned" this "mission." The court further noted that Dowdy testified that appellant asked for money during the encounter. The court further found that appellant inflicted, or threatened to inflict, physical harm upon Dowdy and that he had a deadly weapon (a knife) on or about his person or under his control. The court additionally determined that appellant's conduct facilitated Wright in stabbing McCulloch and that he thereby aided or abetted Wright in committing felonious assault.

{¶ 13} On April 13, 2015, the trial court found appellant guilty of (1) aggravated burglary in violation of R.C. 2911.11(A)(1), and (2) complicity to felonious assault in violation of R.C.

2903.11(A)(1) and R.C. 2923.03(A)(2). The court determined that the offenses did not merge

and sentenced appellant on both counts. The court explained:

> "Although these crimes could be committed with the same act, the Aggravate[d] Burglary was completed upon Defendant forcing his way into the home, demanding money and threatening the victims and, indeed, by sitting on the one victim's chest and kneeling on his arms. The felonious assault against the other victim occurred after the burglary was complete, and in which Defendant was found to be complicit. Defendant had separate animi for each of the crimes and there were separate victims of each of the crimes."

The court sentenced appellant to serve four years in prison for aggravated burglary and two years

for felonious assault with the sentences to be served consecutively. This appeal followed.

I

{¶ 14} In his first assignment of error, appellant asserts that the trial court abused its

discretion by permitting the alleged victims, McCulloch and Dowdy, to remain in the courtroom

during trial. Appellant contends that permitting them to remain in the courtroom violated his

right to a fair trial. Appellant argues that permitting both alleged victims to remain in the

courtroom allowed the second victim who testified, Dowdy, to ensure that his testimony was

consistent with the first victim's testimony.

Appellant additionally contends that the trial court wrongly determined that Dowdy was a

"victim" of the crime and, thus, not subject to the separation of witnesses rule. Appellant notes

that the indictment identified McCulloch and Dowdy as aggravated burglary victims and

identified McCulloch as the only felonious assault victim. Appellant asserts, however, that

Dowdy could not have been an aggravated burglary victim because he did not own the house and

was not deprived of his possessions or property.

{¶ 15} Generally, a trial court possesses discretion to allow a victim to remain in the courtroom during testimony. State v. Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶96; State v. Shifflet, 2015-Ohio-4250, 44 N.E.3d 966 (4th Dist.), ¶67, citing In re Morris, 12th Dist. Butler No. CA2002–03–054, 2002-Ohio-5881, 2002 WL 31414557; State v. Maley, 1st Dist. No. C–120599, 2013–Ohio–3452, ¶3; State v. Klusty, 5th Dist. Delaware No. 14CAA070040, 2015-Ohio-2843, ¶32. Consequently, a reviewing court will not reverse a trial court's decision to allow a victim to remain in the courtroom during testimony unless the trial court abused its discretion. "An abuse of discretion is more than a mere error of law or judgment." State v. Thompson, 141 Ohio St.3d 254, 2014–Ohio–4751, 23 N.E.3d 1096, ¶91; accord State v. Johnson, 144 Ohio St.3d 518, 2015–Ohio–4903, 45 N.E.3d 208, ¶75. Instead, "'[a] trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.'" State v. Keenan, 143 Ohio St.3d 397, 2015-Ohio–2484, 38 N.E.3d 870, ¶7, quoting State v. Darmond, 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶34. An abuse of discretion includes a situation in which a trial court did not engage in a "'sound reasoning process.'" State v. Morris, 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶14, quoting AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp., 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Moreover, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." Darmond at ¶34.

{¶ 16} Evid.R. 615 governs the separation of witnesses during testimony and provides:

(A) Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. An order directing

the "exclusion" or "separation" of witnesses or the like, in general terms without specification of other or additional limitations, is effective only to require the exclusion of witnesses from the hearing during the testimony of other witnesses.

The purpose of a separation order is "'so that [witnesses] cannot hear the testimony of other witnesses,' Evid.R. 615, and tailor their own testimony accordingly." State v. Waddy, 63 Ohio St.3d 424, 434, 588 N.E.2d 819 (1992). Evid.R. 615 "'is predicated on the well-established and time-honored practice of separating witnesses in order to facilitate the exposure of inconsistencies in their testimony and to prevent the possibility of a witness shaping his or her testimony to conform with that of another.' Weissenberger's Ohio Evidence, Treatise, Section 615.1." State v. Beavers, 2nd Dist. Montgomery No. 26036, 2015-Ohio-1161, ¶66, quoting State v. Hartzell, 2d Dist. Montgomery No. 17499, 1999 WL 957746 (Aug. 20, 1999).

{¶ 17} Evid.R. 615(B)(4) does not, however, authorize trial courts to exclude "in a criminal proceeding, a victim of the charged offense to the extent that the victim's presence is authorized by statute enacted by the General Assembly." R.C. 2930.09 authorizes a victim of the charged offense(s) to remain in the courtroom "whenever the defendant * * * in the case is present during any stage of the case against the defendant * * * that is conducted on the record, other than a grand jury proceeding, unless the court determines that exclusion of the victim is necessary to protect the defendant's * * * right to a fair trial * * *." Thus, under Evid.R. 615(B)(4) and R.C. 2930.09, a trial court may not exclude a victim from the courtroom during other witnesses' testimony, unless the court finds that doing so is necessary to protect the defendant's right to a fair trial.

{¶ 18} The defendant bears the burden of establishing that the victim's presence compromises the defendant's right to a fair trial. State v. Ricco, 11th Dist. Lake No.

2008-L-169, 2009-Ohio-5894, ¶27. "[F]or a defendant to show that a victim's presence would result in an unfair trial, she must present particularized evidence that the victim's testimony will be so affected by the victim's presence during the testimony of other witnesses that her right to a fair trial would be violated. General assertions that it is possible are insufficient." State v. Maley, 1st Dist. Hamilton No. C♥120599, 2013-Ohio-3452, ¶7.

{¶ 19} In the case sub judice, we do not believe that the trial court abused its discretion by permitting both victims to remain in the courtroom. Appellant has not shown how permitting the two alleged victims to remain in the courtroom prejudiced his right to a fair trial. We point out that appellant chose to be tried by the court, and not by a jury. The trial court specifically stated that it understood appellant's concerns that the victims might tailor their testimony to conform to the other and took this consideration into account. See State v. Ricco, 11th Dist. Lake No. 2008-L-169, 2009-Ohio-5894, ¶27 (determining that in bench trial, defendant's right to fair trial not violated by permitting victim to remain in courtroom during testimony). Furthermore, appellant's counsel cross-examined each victim regarding his testimony and questioned each about apparent inconsistencies in their versions of the events that transpired on November 12, 2013. Maley at ¶8 (stating that defendant's "argument that the victim 'tailored' his testimony to what he heard from [other witnesses] is negated by his cross-examination"); State v. Marshall, 12th Dist. Butler No. CA2008-03-093, 2009-Ohio-2197, ¶44 (noting that defendant's attorney cross-examined alleged victims "and therefore had the opportunity to test whether their testimony was tailored or truthful"); State v. Barney, 4th Dist. Meigs No. 97CA12, 1999 WL 378755, *7 (June 7, 1999). We additionally observe that the victims' testimony did not mirror each other in a manner to suggest that the second victim who testified, Dowdy,

attempted to tailor his testimony to match the first victim's testimony. Indeed, the victims offered somewhat differing accounts of the precise series of events that led to McCulloch's stabbing. This fact tends to support the likelihood that each testified according to his own recollection, rather than according to what the other victim stated while testifying. Thus, we do not believe that appellant established that the victims' presence compromised his right to a fair trial. Consequently, we do not believe that the trial court abused its discretion by permitting the two alleged victims to remain in the courtroom during other witnesses' testimony.

{¶ 20} Furthermore, we reject appellant's argument that the trial court erred by determining that Dowdy was a "victim" not subject to exclusion. We observe that appellant did not argue during the trial court proceedings that the court erred by concluding that Dowdy was a "victim" of the crime and not subject to exclusion. Thus, appellant forfeited the right to raise this issue on appeal. It is well-established that "'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" State v. Quarterman, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶15, quoting State v. Awan, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting State v. Childs, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Appellate courts nevertheless have discretion to consider forfeited issues using a plain-error analysis. E.g., Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶27. Crim.R. 52(B) provides appellate courts with discretion to correct "[p]lain errors or defects affecting substantial rights." "To prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it

affected his substantial rights," i.e., the trial court's error must have affected the outcome of the trial. State v. Obermiller, 2016-Ohio-1594, ¶62, citing State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "We take '[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Obermiller at ¶62, quoting State v. Long, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." State v. Hill, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶ 21} In the case sub judice, assuming, arguendo, that the trial court improperly determined that Dowdy was a "victim,"[1] and thus, improperly permitted him to remain in the courtroom during other witnesses' testimony, appellant cannot show that Dowdy's exclusion from the courtroom during other witnesses' testimony would have changed the result of his trial. As we explained, appellant has not shown that Dowdy's testimony closely mirrored McCulloch's so as to suggest that Dowdy tailored his testimony to match McCulloch's testimony. Additionally, nothing in the record suggests that Dowdy otherwise tailored his testimony to match any other witnesses' testimony. Given these circumstances, we do not see how excluding Dowdy from the courtroom during other witnesses' testimony would have affected the outcome of the trial.

{¶ 22} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

II

---

[1] "The question of who constitutes a 'victim' under the statute is a question of law that is reviewed de novo." State v. Harris, 6th Dist. Wood No. WD–14–069, 2015–Ohio–4412, ¶8; accord State v. Hunter, 2d Dist. Montgomery No. 25521, 2013-Ohio-3759, 2013 WL 4716164, ¶7.

{¶ 23} In his second assignment of error, appellant raises three arguments: (1) the trial court erred by denying his Crim.R. 29(A) motion for judgment of acquittal; (2) the state did not present sufficient evidence to support his convictions; and (3) his convictions are against the manifest weight of the evidence.

{¶ 24} Initially, we observe that although appellant combines the sufficiency[2] and manifest weight of the evidence arguments, "sufficiency" and "manifest weight" present two distinct legal concepts.  Eastley v. Volkman, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶23 (stating that "sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence"); State v. Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), syllabus.  A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt.  Id. at syllabus.  The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense

---

[2] Crim.R. 29(A) states:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

"A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."  State v. Tenace, 109 Ohio St.3d 255, 2006–Ohio–2417, 847 N.E.2d 386 (2006), ¶37.

beyond a reasonable doubt.  E.g., Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jenks, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶ 25} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution.  E.g., State v. Hill, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); State v. Grant, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did.  State v. Tibbetts, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); State v. Treesh, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 26} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence."  Thompkins, 78 Ohio St.3d at 387.  When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider the witness credibility.  State v. Dean, 2015-Ohio-4347, ¶151, citing Thompkins, 78 Ohio St.3d at 387.  A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  State v. Issa, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); State v. Murphy, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶31.  "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to

what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" Barberton v. Jenney, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶20, quoting State v. Konya, 2nd Dist. Montgomery No. 21434, 2006–Ohio–6312, ¶6, quoting State v. Lawson, 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997). As the court explained in Eastley v. Volkman, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

Id. at ¶21, quoting Seasons Coal Co., Inc. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact-finder, as long as a rational basis exists in the record for its decision. State v. Picklesimer, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶24; accord State v. Howard, 4th Dist. Ross No. 07CA2948, 2007–Ohio–6331, ¶6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶ 27} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). If the

prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence.  E.g., State v. Eley, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, superseded by state constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).  Accord Eastley at ¶12, quoting Thompkins, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when """"the greater amount of credible evidence"""" supports it).  Furthermore, """"[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.""""  State v. Cooper, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶17, quoting State v. Mason, 9th Dist. No. 21397, 2003-Ohio-5785, 2003 WL 22439816, ¶17, quoting State v. Gilliam, 9th Dist. No. 97CA006757, 1998 WL 487085 (Aug. 12, 1998).  Moreover, a conviction is not against the manifest weight of the evidence even if the "evidence is subject to different interpretations."  State v. Adams, 2d Dist. Greene Nos. 2013CA61, 2013-CA-62, 2014-Ohio-3432, 2014WL3887215, ¶24.  Instead, a reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"  Thompkins, 78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175.  Accord State v. Lindsey, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 28} When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.  See State v. Pollitt, 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556,

¶15. "'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" State v. Lombardi, 9th Dist. Summit No. 22435, 2005-Ohio-4942, ¶9, quoting State v. Roberts, 9th Dist. Lorain No. 96CA6462 (Sept. 17, 1997). In the case sub judice, therefore, we first consider whether appellant's convictions are against the manifest weight of the evidence.

{¶ 29} In the case at bar, we believe that the state presented substantial competent and credible evidence to support appellant's aggravated burglary and complicity to felonious assault convictions. This is not one of those exceptional circumstances where the evidence weighs heavily against conviction.

{¶ 30} The aggravated burglary statute, R.C. 2911.11(A), provides:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶ 31} We believe, after our review of the record, that substantial competent and credible evidence supports a finding that appellant unlawfully trespassed in McCulloch's home with purpose to commit theft and that he inflicted, or attempted or threatened to inflict, physical harm on McCulloch or Dowdy. Both McCulloch and Dowdy testified that appellant and Wright gained entry to the home by claiming to be "John Woolet." After Dowdy opened the door

expecting John Woolet, appellant charged through the doorway. Neither Dowdy nor McCulloch gave appellant permission to enter the premises. Dowdy stated that appellant appeared to be the leader of the two and that appellant asked, "where the shit at," meaning the money and drugs. Dowdy also testified that appellant and Wright indicated that they were at McCulloch's trailer to "rob" them. Moreover, the trial court judge noted that the surveillance video of the moments preceding appellant's entrance into McCulloch's residence shows that appellant and Wright did not immediately knock on the door. The court determined that their conduct lent support to the theory that appellant and Wright discussed the plan to deprive McCulloch of his drugs and/or money before they knocked on his door. The court explained that the surveillance video showed appellant and Wright engaged in "casual time" between the time that they exited the vehicle and the time that they knocked on McCulloch's front door. The court found that their conduct illustrated that they were not innocently visiting McCulloch's residence, but rather, "this was some sort of preplanned mission to accomplish what was originally set out to be * * * a theft * * * ." Furthermore, substantial evidence supports a finding that appellant inflicted, or attempted or threatened to inflict physical harm upon Dowdy and that he possessed a deadly weapon. Dowdy testified that appellant held a knife to his neck and later cut his hand. Investigating officers observed injuries to Dowdy's hand. Thus, given all of the foregoing evidence, we believe that substantial competent and credible evidence supports appellant's aggravated burglary conviction. Appellant's aggravated burglary conviction is not, therefore, against the manifest weight of the evidence.

{¶ 32} Additionally, we do not believe that appellant's complicity to felonious assault conviction is against the manifest weight of the evidence. The felonious assault statute, R.C.

2903.11, prohibits a person from knowingly causing serious physical harm to another. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). The complicity statute, R.C. 2923.03(A)(2), states in pertinent part: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" Thus, to sustain appellant's complicity to felonious assault conviction, the evidence must show that he knowingly aided or abetted Wright in committing felonious assault. See State v. Ramey, 2015-Ohio-5389, — N.E.3d — (2nd Dist.), ¶54 (explaining that complicity to felonious assault conviction requires proof that the defendant knowingly aided or abetted the principal offender in committing felonious assault); State v. Perry, 9th Dist. Lorain No. 00CA7634 (Feb. 14, 2001) (stating that complicity to felonious assault conviction proper when evidence shows that defendant knowingly aided or abetted the principal offender in causing serious physical harm to the victim).

> "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."

State v. Johnson, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus; accord In re T.K., 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶13. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" Johnson, 93 Ohio St.3d at 245, 754 N.E.2d 796, quoting State v. Pruett, 28 Ohio

App.2d 29, 34, 273 N.E.2d 884 (4ᵗʰ Dist. 1971).   However, "'the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'"   Id. at 243, quoting State v. Widner, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982).  "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission."   Id.

{¶ 33} In the case sub judice, we believe that substantial competent and credible evidence supports a finding that appellant was more than an innocent bystander to the felonious assault, but instead, that he knowingly aided or abetted Wright in committing felonious assault.   The state presented evidence that appellant participated in the fight between Wright and McCulloch and that his assistance facilitated Wright's stabbing of McCulloch.   The court explained that it did not have "difficulty" finding appellant guilty of "felonious assault because it is almost essentially due to [appellant]'s actions that * * * the stabbing of Mr. McCulloch was able to take place according to how the events unfolded."   Additionally, Dowdy testified that appellant expressed an intent to kill.   Thus, the evidence supports a finding that appellant possessed at least the same criminal intent as Wright.   Furthermore, according to both McCulloch and Dowdy, appellant and Wright each expressed either verbally or through their conduct, their intent to harm McCulloch and Dowdy in order to obtain drugs and money.   Additionally, the trial court found that appellant had a knife in his possession during the melee.   Although appellant offered an innocent explanation and claimed that he discovered the knife in his coat pocket after leaving McCulloch's house, the trial court was free to reject appellant's explanation and believe that appellant went to McCulloch's house armed with a knife.   The evidence concerning appellant's presence in McCulloch's house, his companionship with Wright, and his conduct before and

after the offense amply supports a finding that appellant knowingly aided or abetted Wright in committing felonious assault. We do not believe that the fact-finder clearly lost its way by convicting appellant. Consequently, appellant's complicity to felonious assault conviction is not against the manifest weight of the evidence. participated in Wright's criminal intent.

{¶ 34} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.

### III

{¶ 35} In his third assignment of error, appellant asserts that trial counsel performed ineffectively in the following respects: (1) by failing to object to hearsay; (2) by failing to object to leading questions; (3) by failing to view the exhibits handed to witnesses to confirm that they were the correct exhibits; (4) by failing to review the documents to which trial counsel stipulated; (5) by stipulating to the admission of medical records instead of cross-examining medical providers and objecting on the basis of hearsay; (6) by stipulating to the "serious physical injury" element of felonious assault instead of requiring medical testimony; and (7) by failing to advise appellant that trial counsel, a former Athens County assistant prosecuting attorney, prosecuted appellant in 2008 for aggravated possession of drugs.

### A

### INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

{¶ 36} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective

assistance" of counsel.  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); State v. Creech, 188 Ohio App.3d 513, 2010–Ohio–2553, 936 N.E.2d 79, ¶39 (4th Dist.).

{¶ 37} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial.  Strickland, 466 U.S. at 687; State v. Powell, 132 Ohio St.3d 233, 2012–Ohio–2577, 971 N.E.2d 865, ¶85.  "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  State v. Conway, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶95 (citations omitted); accord State v. Wesson, 137 Ohio St.3d 309, 2013–Ohio–4575, 999 N.E.2d 557, ¶81.  "Failure to establish either element is fatal to the claim."  State v. Jones, 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶14.  Therefore, if one element is dispositive, a court need not analyze both.  State v. Madrigal, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶ 38} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id.  "A properly licensed attorney is presumed to

execute his duties in an ethical and competent manner." State v. Taylor, 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶10, citing State v. Smith, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. State v. Gondor, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶62; State v. Hamblin, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶ 39} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. State v. Short, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶113; State v. White, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require the defendant to affirmatively establish prejudice. State v. Clark, 4th Dist. Pike No. 02CA684, 2003–Ohio–1707, ¶22; State v. Tucker, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002). As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. E.g., State v. Jenkins, 4th Dist. Ross No. 13CA3413, 2014–Ohio–3123, ¶22; State v. Simmons, 4th Dist. Highland No. 13CA4, 2013–Ohio–2890, ¶25; State v. Halley, 4th Dist. Gallia No. 10CA13, 2012–Ohio–1625, ¶25; State v. Leonard, 4th Dist. Athens No. 08CA24, 2009–Ohio–6191, ¶68; accord State v. Powell, 132 Ohio St.3d 233, 2012–Ohio–2577, 971 N.E.2d 865, ¶86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

B

HEARSAY

{¶ 40} Appellant first complains that trial counsel performed ineffectively by failing to object to inadmissible hearsay. Specifically, he asserts trial counsel performed ineffectively by failing to object to (1) Dowdy's testimony that he went to the hospital due to the injury appellant allegedly caused, that the injury was infected, and that the injury "cut down to the bone, and hit a tendon"; (2) another witness's testimony that Wright was looking for drugs; (3) testimony that McCulloch "always had crack cocaine, that he's been robbed before" [sic]; and (4) testimony that "the doctor even said that there had been several defensive wounds."

{¶ 41} First, we observe that "'[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" State v. Fears, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), quoting State v. Holloway, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). A defendant must also show that he was materially prejudiced by the failure to object. Holloway, 38 Ohio St.3d at 244. Accord State v. Hale, 119 Ohio St.3d 118, 2008–Ohio–3426, 892 N.E.2d 864, ¶233.

{¶ 42} Additionally, tactical decisions, such as whether and when to object, ordinarily do not give rise to a claim for ineffective assistance. State v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶139–140. As the court explained in Johnson at ¶139–140:

> "[F]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness. State v. Holloway (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831. * * *
> [E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections,

despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice. Lundgren v. Mitchell (C.A.6, 2006), 440 F.3d 754, 774. Accord State v. Campbell, 69 Ohio St.3d 38, 52–53, 1994–Ohio–492, 630 N.E.2d 339."

{¶ 43} In the case sub judice, we believe that trial counsel's decision not to object fell within the broad realm of trial strategy and did not constitute deficient performance. Moreover, even if trial counsel performed deficiently by failing to object to alleged hearsay testimony, appellant cannot demonstrate that the failure to object affected the outcome of the trial. Even if the statements had been excluded, the evidence still amply establishes that appellant committed aggravated burglary (i.e., that appellant and Wright unlawfully entered McCulloch's house, took McCulloch's money, and injured both McCulloch and Dowdy) and that he knowingly aided or abetted Wright in committing felonious assault. While appellant speculates that some of the alleged hearsay statements bolstered the state's theory of the case, his speculation is not sufficient to demonstrate ineffective assistance of counsel. Had trial counsel objected to the statements and the court excluded them, we cannot find a reasonable probability that the outcome of the proceedings would have been different.

C

LEADING QUESTIONS

{¶ 44} Appellant next argues that trial counsel performed ineffectively by failing to object to leading questions. We do not agree.

{¶ 45} "Evid.R. 611(C) does not preclude the use of leading questions on direct examination; instead, the rule provides that 'it is within the trial court's discretion to allow

leading questions on direct examination.'"[3]  State v. Williams, 4th Dist. Jackson No. 15CA3,

2016-Ohio-733, ¶34, quoting State v. Jackson, 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001).

Accordingly, "the failure to object to leading questions does not constitute ineffective assistance

of counsel."  Id., quoting Jackson, 92 Ohio St.3d at 449, and citing State v. Stairhime, 3d Dist.

Defiance No. 4–13–06, 2014–Ohio–1791, ¶46 (stating that "we cannot find that any failure to

object to any leading questions would rise to the level of ineffective assistance of counsel").

Consequently, we reject appellant's claim that trial counsel performed ineffectively by failing to

object to leading questions.

D

EXHIBITS AND STIPULATIONS

{¶ 46} Appellant next argues that trial counsel performed ineffectively (1) by failing to

ask to see State's Exhibits 35 and 36, copies of the lineup photographs, before the prosecutor

showed them to the witness, (2) by failing to review the two hundred eighty pages of medical

records to which counsel had stipulated, (3) by stipulating to the admission of medical records

and, thus, forgoing the opportunity to cross-examine the medical providers, and (4) by stipulating

to the "serious physical harm" element of felonious assault.

---

[3] Evid.R. 611(C) states:

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

{¶ 47} Assuming, arguendo, that trial counsel performed deficiently in any of these respects, appellant cannot show how counsel's alleged deficient performance affected the outcome of the trial. Appellant cannot establish that the result of his trial would have been different if counsel had reviewed Exhibits 35 and 36 or the two hundred eighty pages of medical records. Furthermore, he cannot show that the result of his trial would have been different if counsel had cross-examined the medical providers or had not stipulated to the "serious physical harm" requirement. The evidence clearly documents that the stabbing caused McCulloch's intestines to protrude. Cross-examining his medical providers would not have changed those facts or have led any reasonable fact-finder to conclude that McCulloch did not suffer serious physical harm. Additionally, if counsel had disputed the "serious physical harm" element, the nature of McCulloch's injury shows that it would have been a fruitless dispute. Consequently, we reject these ineffectiveness claims.

E

Alleged conflict of interest

{¶ 48} Appellant additionally claims that trial counsel, a former Athens County assistant prosecutor, performed ineffectively by failing to advise appellant that counsel previously prosecuted appellant for aggravated drug possession.

{¶ 49} The Sixth Amendment right to effective assistance of counsel includes the right to counsel free from conflicts of interest. State v. Gillard, 64 Ohio St.3d 304, 312, 595 N.E.2d 878 (1992); accord State v. McGhee, 4th Dist. Lawrence No. 04CA15, 2005-Ohio-1585, ¶21. "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." Cuyler v. Sullivan,

446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980). A court that is determining whether defense counsel rendered ineffective assistance based upon conflicting interests will presume prejudice "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" Strickland, 466 U.S. at 692, quoting Cuyler, 446 U.S. at 350, 348 (footnote omitted). Accord Gillard, 78 Ohio St.3d at 552. "[T]he possibility of conflict is insufficient to impugn a criminal conviction." Cuyler, 446 U.S. at 350.

> "A possible conflict of interest exists where the '"interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties."' State v. Dillon (1995), 74 Ohio St.3d 166, 168, 657 N.E.2d 273, 275–276, quoting Cuyler, 446 U.S. at 356, 100 S.Ct. at 1722, 64 L.Ed.2d at 351–352, fn.3. It follows, then, that an actual conflict of interest exists if, "'during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action."' Id. at 169, 657 N.E.2d at 276, quoting Cuyler, 446 U.S. at 356, 100 S.Ct. at 1722, 64 L.Ed.2d at 351–352, fn.3; see, also, Winkler[ v. Keane], 7 F.3d [304,] 307 [(C.A.2, 1993). Indeed, we have said that a lawyer represents conflicting interests 'when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.' [State v.] Manross, 40 Ohio St.3d 180,] 182, 532 N.E.2d [735,] 738 [(1988)]."

Gillard, 78 Ohio St.3d at 552-53 (emphases omitted.).

{¶ 50} In the case at bar, appellant has not identified how his trial counsel represented divergent interests. His conclusory allegation that trial counsel was ineffective for failing to inform appellant that counsel previously prosecuted appellant in a criminal trial does not sufficiently show an actual conflict of interest. State v. Stewart, 4th Dist. Washington No. 02CA29, 2003-Ohio-4850, ¶19. Consequently, appellant has not shown that trial counsel rendered ineffective assistance of counsel.

{¶ 51} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error.

IV

{¶ 52} In his fourth assignment of error, appellant argues that the trial court erred by failing to merge his aggravated burglary and felonious assault convictions. He asserts that the two offenses were of similar import, occurred contemporaneously, and were committed with the same animus.

{¶ 53} Appellate courts conduct a de novo review of a trial court's R.C. 2941.25 merger determination. State v. Williams, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶28; accord State v. Neal, 4th Dist. Hocking No. 15CA1, 2016-Ohio-64, ¶52. We therefore afford no deference to the trial court's legal conclusion, but instead, independently determine whether the established facts satisfy the applicable legal standard. Williams at ¶¶25-27 (explaining de novo standard in merger context and stating that fact-finder determines facts and appellate court determines whether facts satisfy applicable legal standard).

{¶ 54} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." State v. Underwood, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶23; accord State v. Miranda, 138 Ohio St.3d 184, 2014–Ohio–451, 5 N.E.3d 603; State v. Washington, 137 Ohio St.3d 427, 2013–Ohio–4982, 999 N.E.2d 661, ¶11. The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may

contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 55} Courts conduct a three-part inquiry to determine whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." State v. Earley, 2015-Ohio-4615, ¶12, citing State v. Ruff, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶31 and paragraphs one, two, and three of the syllabus.

{¶ 56} Offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." Ruff at ¶21. Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." Id. at ¶23. We further note that the defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. State v. Washington, 137 Ohio St.3d 427, 2013–Ohio–4982, 999 N.E.2d 661, ¶18, citing State v. Mughni, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

{¶ 57} In the case sub judice, we do not believe that the trial court incorrectly determined that appellant could be subjected to multiple punishments for his aggravated burglary and complicity to felonious assault convictions. The trial court determined that appellant committed the offenses separately. The court found that appellant completed his aggravated burglary before committing the complicity to felonious assault offense. The court noted that appellant trespassed into McCulloch's residence with purpose to commit a theft offense and that he inflicted physical harm upon Dowdy and that he also possessed a deadly weapon. Apart from this conduct, the court found that appellant possessed a separate intent to aid or abet Wright in causing serious physical harm to McCulloch. Given the trial court's factual considerations, we are unable to determine that it inappropriately determined that appellant's conduct constituted two offenses of dissimilar import. See State v. Ortiz, 6th Dist. Lucas No. L-14-1251, 2016-Ohio-974 (determining that defendant's conduct–hitting victim and forcing his way inside residence, punching victim and demanding victim's wallet, and stomping on victim–constituted three separate offenses of aggravated burglary, aggravated robbery, and felonious assault that did not merge for sentencing purposes).

{¶ 58} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fourth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
For the Court

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

BY:_____
Peter B. Abele, Judge

## <u>NOTICE TO COUNSEL</u>

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.