OPINION
{¶ 1} Defendant-appellant, Robert C. Gilbert, III, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of one count of unlawful sexual conduct with a minor. For the reasons that follow, we affirm defendant's conviction.
 {¶ 2} On January 24, 2003, defendant was indicted on one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04. The indictment alleged that defendant digitally penetrated the vaginal cavity of a minor female, knowing that she was 13 years of age or older but less than 16 years of age, or being reckless in that regard. The indictment further alleged that defendant was ten or more years older than the victim.
 {¶ 3} A jury trial commenced in June 2004. Following presentation of the prosecution's case-in-chief, and again at the close of all the evidence, defendant moved for judgment of acquittal pursuant to Crim.R. 29 on the basis that the evidence was insufficient to convict him. The trial court overruled both motions. Following deliberations, the jury found defendant guilty as charged in the indictment. The trial court sentenced defendant to five years of community control. Defendant appeals from the judgment and assigns the following errors:
[1]. The court erroneously permitted the prosecutor to publish a degrading photograph of appellant to the jury during opening statements.
[2]. The prosecution's focus on an irrelevant matter not bearing on proof of the elements of the offense charged constituted prosecutorial misconduct requiring reversal.
[3]. The evidence was legally insufficient to support appellant's conviction as the state failed to prove penetration, an essential element of the offense of illegal sexual activity with a minor.
[4]. The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
[5]. Conviction was against the manifest weight of the evidence insofar as the state failed to prove penetration and that appellant knew or was reckless with respect to knowledge the victim was between the ages of thirteen and sixteen.
 {¶ 4} In the summer of 2002, the victim, S.M.,[1] then 15 years old, visited an adult website where viewers rate photographs of other website participants in anticipation of being matched with other participants for personal correspondence. Claiming she was 18 years old, S.M. created a profile for herself on the website.
 {¶ 5} S.M. was notified that she was matched with defendant, and she soon began communicating with him via e-mail. Between November 24, 2002 and December 14, 2002, S.M. and defendant exchanged approximately 100 e-mails. The e-mails were admitted at trial as State's exhibit No. 1; most contained sexually explicit language. One of the e-mails from defendant, sent on December 11, 2002, included as an attachment a photograph of his erect penis. S.M. testified that she also engaged in graphic sexual conversations with defendant over AOL Instant Messenger ("IM") and on the telephone. S.M. admitted that she and defendant often discussed the possibility of meeting in person and engaging in sexual behavior.
 {¶ 6} S.M. and defendant eventually agreed to meet in person. On December 16, 2002, they met in a parking lot and walked to S.M.'s house. Once inside, they kissed and fondled one another. S.M. testified that they eventually unzipped each other's jeans and that defendant "felt [S.M.] in [her] vaginal area." (Tr. 51.) S.M. stated that defendant's fingers "were on [her] clit and around the vaginal opening, but they didn't go in." (Tr. 52.) She further averred that although defendant did not put his finger all the way inside her, his fingers went "within the exterior of [her] vaginal lips." (Tr. 52.) Using two fingers to represent the labia, the prosecution requested S.M. to describe exactly how defendant touched her. S.M. testified that defendant put his finger "less than a centimeter" inside the labia or lips of her vagina. (Tr. 60.)
 {¶ 7} According to S.M., the sexual activity ceased abruptly when her father came home. S.M. urged defendant to leave through the back door. When her father questioned her about defendant's identity, S.M. initially lied and said he was a boy from school. Her mother later coaxed her into revealing defendant's true identity. Thereafter, her parents contacted the police. A police officer came to the house and questioned S.M. Later that night, she went to the police station and wrote out a statement.
 {¶ 8} At the prosecution's urging, S.M. reviewed the statement she gave to police and acknowledged it did not mention that defendant put his fingers inside her vagina. When asked why she omitted this detail, she averred "[b]ecause it didn't happen." (Tr. 57.) When asked to explain what she understood the phrase "inserting a finger into your vagina" to mean, she averred that it meant "putting it in the entire length." (Tr. 57.)
 {¶ 9} On cross-examination, S.M. responded, "[n]ot entirely, no" when asked whether defendant inserted his finger into her vaginal cavity. (Tr. 78.) She reiterated that defendant "put his finger on the outside of the labia" and "touched the inside less than a centimeter." Id. S.M. further testified that defendant's finger was "near the top" of the vaginal cavity for more than five minutes and was also "towards the vaginal hole," that is, "less than a centimeter" for a couple of seconds. (Tr. 79.)
 {¶ 10} On redirect examination, S.M. testified that she did not consider what defendant did with his finger to constitute penetration. She further testified that defendant "rubb[ed] [her] clit with his fingers"; she described her "clit" as situated "within the labia of [her] vagina." (Tr. 97.) She further testified that defendant's actions caused her discomfort "around the opening" of her vagina. (Tr. 98.)
 {¶ 11} Two officers from the Gahanna Police Department testified for the prosecution. One interviewed S.M. at her home; the other met with S.M. and her parents at the police station and had S.M. prepare a written statement. Thereafter, defendant was arrested; he executed a constitutional rights waiver, stating his age as 29. The next morning, one of the officers interviewed defendant's fiancé, with whom defendant shared an apartment. Defendant's and S.M.'s computers were impounded and turned over to the United States Secret Service for forensic examination. The parties stipulated as to the authenticity of the e-mails retrieved from both computers. At trial, defendant's former fiancé identified the photograph of defendant's penis.
 {¶ 12} Defendant's first assignment of error claims that the trial court erroneously permitted the prosecution to publish the photograph of defendant's penis to the jury during its opening statement.
 {¶ 13} Defense counsel objected to the publication, and a side bar discussion took place. Thereafter, the trial court permitted the prosecution to show the photograph to the jury. The photograph was included among the e-mails that were subsequently admitted as State's exhibit No. 1.
 {¶ 14} Defendant maintains there was no legitimate reason for displaying the photograph to the jury before it was offered as an exhibit and that the prosecution did so only to degrade and humiliate him and inflame the passions of the jury.
 {¶ 15} "[T]he trial court has broad discretion to regulate the opening statement. It will not be reversed for its efforts and decisions in that respect absent an abuse of that discretion." Riddle v. Butt (Feb. 2, 1994), Clark App. No. 2993. An abuse of discretion implies an arbitrary, unconscionable, or unreasonable attitude on the part of the trial court.State v. Adams (1980), 62 Ohio St.2d 151, 157. A reviewing court may not substitute its judgment for that of the trial court when applying the abuse of discretion standard. Berk v. Matthews (1990), 53 Ohio St.3d 161,169.
 {¶ 16} During opening statement, the prosecution is permitted to refer to evidence it intends to present during trial. State v. Back (July 18, 1990), Medina App. No. 1827. However, while counsel is afforded wide latitude in the presentation of opening statements, counsel is not permitted to use that opportunity to introduce evidence. The prosecution can summarize evidence, it can describe evidence, it can anticipate evidence; however, it risks a mistrial when it engages in an attempt to actually introduce evidence. Even when that specific evidence is later properly admitted, such a premature use can still potentially result in reversible error. The jury instruction about not considering opening and closing statements as evidence can only cure so much damage. There is some evidence which, taken out of context, can blacken and distort its true relevance to the point of prejudice.
 {¶ 17} Fortunately for the prosecution, that was not the case here. A review of the prosecution's entire opening statement reveals that the prosecution, without objection from defense counsel, read verbatim many of the very graphic and sexually explicit e-mails exchanged between defendant and S.M prior to its display of the photograph. As it was presented in its proper context, we are hesitant to conclude that the photograph of an erect penis added much to the initial shock and disgust suggested by the content of the sexually explicit e-mails. In other words, we cannot see how the challenged photograph was fatally prejudicial given that the jury had already been subjected to the sexually graphic language contained in the e-mails.
 {¶ 18} Further, the trial court later admitted the photograph and e-mails during the trial and instructed the jury that opening statements were not evidence. See State v. Frazier (1995), 73 Ohio St.3d 323, 338. Accordingly, in this instance, the trial court did not abuse its discretion in permitting the use of the photograph during opening statement. The first assignment of error is not well-taken.
 {¶ 19} Defendant's second assignment of error alleges that the prosecution engaged in misconduct by publishing the photograph to the jury during opening statement. Defendant contends the prosecution's efforts in this regard were calculated merely to degrade, humiliate and ridicule him and to inflame the passions of the jury. The state counters the trial court properly allowed publication of the photograph; thus, the prosecution did not engage in misconduct.
 {¶ 20} For the reasons stated in our resolution of the first assignment of error, we conclude that even if the prosecution's actions in publishing the photograph of defendant's penis during opening statement constituted misconduct, it was not prejudicial. Reviewing the alleged misconduct within the context of the entire trial, we conclude that defendant was not denied a fair trial. Accordingly, the second assignment of error is not well-taken.
 {¶ 21} In his third assignment of error, defendant asserts the evidence was legally insufficient to support his conviction. In his fourth assignment of error, defendant contends the trial court erroneously overruled his Crim.R. 29 motions for judgment of acquittal. As virtually identical standards of review apply to defendant's arguments regarding sufficiency of the evidence and Crim.R. 29, we will address both assignments of error together. State v. George, Franklin App. No. 02AP-1412, 2003-Ohio-6658, at ¶ 8, citing State v. Ali,154 Ohio App.3d 493, 2003-Ohio-5150, at ¶ 21.
 {¶ 22} Crim.R. 29(A) provides that a trial court shall enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the charged offense. A trial court may not enter a judgment of acquittal if the record demonstrates that reasonable minds could reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988),51 Ohio App.3d 215, 216. In making this determination, the evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 23} A conviction based on insufficient evidence constitutes a denial of due process. State v. Thompkins (1997), 78 Ohio St.3d 380, 386; see, also, State v. Scott, 101 Ohio St.3d 31, 2004-Ohio-10, at ¶ 31. "Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict * * *." Statev. Smith (1997), 80 Ohio St.3d 89, 113, following Thompkins, supra. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998),82 Ohio St.3d 438, 444, following Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781, 2789. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." Clemons, supra.
 {¶ 24} Defendant was convicted of unlawful sexual conduct with a minor under R.C. 2907.04. It provides, in relevant part, as follows:
(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of he offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
(B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.
* * *
(3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.
 {¶ 25} The term "sexual conduct" is defined, in part, as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). (Emphasis added.)
 {¶ 26} Defendant contends the evidence was insufficient to establish that he engaged in "sexual conduct" with S.M. More particularly, defendant contends the prosecution was required, but failed, to prove he digitally penetrated S.M.'s vaginal cavity. Defendant contends his actions constituted, at most, "sexual contact," which is defined in part in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the * * * genitals, * * * [or] pubic region, * * * for the purpose of sexually arousing or gratifying either person."
 {¶ 27} Defendant raises a valid point that the code could be susceptible to a tighter interpretation. Nevertheless, the overwhelming majority of the appellate courts in this state which have addressed this point have declined to accept his interpretation.
 {¶ 28} In State v. Childers (Dec. 19, 1996), Franklin App. No. 96APA05-640, the defendant was charged with, inter alia, one count of felonious sexual penetration, in violation of former R.C. 2907.12, stemming from the alleged digital penetration of his five-year-old daughter. At trial, the physician who interviewed and physically examined the child following the incident testified that the child stated that her father had touched her "pee-hole" with his finger. The physician further testified that the physical examination revealed that the child's hymen was still intact and that there was no evidence of penetration into the vagina. Medical records confirmed that the child complained of pain when the physician obtained vestibule cultures with a swab. The physician described the "vestibule" as the area which is bordered by the labia minora through which one would enter the vagina. The physician further testified that the genitalia of a female includes the vestibule, which is the area in between the labia minora and that the vagina is the canal which leads to the uterus and is located behind the hymen in a virginal woman. The child testified that her father touched her "pee-hole."
 {¶ 29} Based upon this evidence, the Childers jury found the defendant guilty as charged in the indictment. On appeal, the defendant maintained the evidence was insufficient to support his conviction for felonious sexual penetration. At the time of the offense, the felonious sexual penetration statute, former R.C. 2907.12(A)(1)(b), provided, in part, that: "[n]o person, without privilege to do so, shall insert any part of the body * * * into the vaginal * * * cavity of another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 30} The Childers defendant argued that to prove felonious sexual penetration, the state was required to present evidence that he actually inserted his finger into the child's vaginal cavity. In rejecting this argument, this court noted that three other courts of appeals had held that some penetration, however slight, was sufficient to constitute a violation of R.C. 2907.12(A)(1)(b) and that it was not necessary that the hymen be broken or that there be any injury to the vagina in order to find a defendant guilty of felonious sexual penetration. Id., citingState v. Shoop (1993), 87 Ohio App.3d 462, 468-469; State v. Geddis
(Dec. 9, 1994), Fulton App. No. 94FU000009; and State v. Recker (Dec. 12, 1991), Putnam App. No. 12-90-7.
 {¶ 31} This court further noted in Childers that those courts applied the rationale that slight penetration is all that is necessary to constitute rape under R.C. 2907.02, and that the same standard should apply to felonious sexual penetration. At the time, the existing version of R.C. 2907.02 provided that: "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" was defined as "vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 32} In addition, in Childers, this court applied the reasoning ofState v. Carpenter (1989), 60 Ohio App.3d 104, 105, which held, quoting State v. Harder (Oct. 9, 1984), Marion App. No. 9-83-26, quoting Annotation, What Constitutes Penetration in Prosecution for Rape or Statutory Rape (1977), 76 A.L.R.3d 163, 171, that "entry of the anterior of the female genital organ, known as the vulva or labia, is sufficient penetration to constitute rape although the vagina is intact and not penetrated in the least * * *."
 {¶ 33} The Second District Court of Appeals reached a similar conclusion in State v. Lucas (Sept. 21, 2001), Montgomery App. No. 18644. There, the defendant was convicted of vaginal rape involving a child less than 13 years of age. The child's trial testimony established that the defendant put his finger inside the child's vagina. On appeal, the defendant argued that this evidence was insufficient to demonstrate penetration. In addressing this argument, the court construed the same definition of "sexual conduct" applicable to the instant case. The court held that to establish vaginal rape, the prosecution must present evidence that an accused penetrated, however slightly, the victim's vagina with an object. The court stated that it "is sufficient if the evidence shows that the force of the object caused the outer lips of the victim's vagina, the labia, to spread." Conversely, the court stated that "it is insufficient * * * if the evidence shows only that the defendant made contact with the labia and no spreading occurred." Id. Applying these parameters, the court found that the victim's testimony was sufficient to establish penetration and therefore sustain his conviction for rape.
 {¶ 34} In State v. Grant, Montgomery App. No. 19824, 2003-Ohio-7240, the court found that the victim's testimony that defendant inserted his finger one-half inch between the lips of her vagina was legally sufficient to demonstrate sexual conduct, stating:
The vagina is the hollow passage leading from the uterus of the female body outward to the exterior genitalia, or vulva, which is comprised of lip-like folds of skin called the labia majora. The term "vaginal cavity" refers to that entire anatomical process and any part of it.
Penetration of the vaginal cavity requires introduction of an object from without, which necessarily implies some forceful spreading of the labia majora. The penetration need only be "slight." R.C. 2907.01(A). Therefore, if the object is introduced with sufficient force to cause the labia majora to spread, penetration has occurred.
[The victim] testified that Defendant put his hand underneath her bathing suit three times. The first time Defendant's finger was near her vagina, which is not a form of "sexual conduct" defined by R.C. 2907.01(A), and is therefore insufficient for Rape. The second time Defendant's finger was on [the victim's] vagina, which is likewise insufficient to show penetration. The third time, according to [the victim], Defendant put his finger "in it." [The victim] explained that Defendant's index finger was one-half inch inside the lips of her vagina.
[The victim's] testimony, if believed, is sufficient to permit the jury reasonably to infer that Defendant's conduct in inserting his finger one-half inch between [the victim's] external labia necessarily caused the labia majora to spread. That evidence is legally sufficient to establish vaginal penetration, and sexual conduct sufficient to support Defendant's conviction for Rape. * * *.
Id. at ¶ 29-32.
 {¶ 35} In the instant case, S.M.'s testimony established that defendant inserted his fingers inside the lips of her vagina far enough to reach her clitoris (a part of the vulva), an action that undoubtedly caused the labia majora to spread.
 {¶ 36} Pursuant to the rationale used in Childers, Lucas, and Grant,
the instant evidence is legally sufficient to establish vaginal penetration, and sexual conduct sufficient to support defendant's conviction for unlawful sexual conduct with a minor.
 {¶ 37} Nevertheless, despite the abundance of case law, both precedential and advisory, we are concerned. As it stands now, touching a single labia on the side away from the vaginal cavity is sexual contact, touching the opposite side would be sexual conduct. That seems a bit esoteric and is a clear example of "hard facts making bad law." Nevertheless, we will not reverse, based on the existing case law from this district and the state.
 {¶ 38} The issues raised in this appeal, specifically the difference between "sexual contact" and "sexual conduct" as those terms relate to digital contact with the vagina or vaginal cavity are worthy of further consideration by the legislature or the Supreme Court of Ohio. The third and fourth assignments of error are not well-taken.
 {¶ 39} Defendant's fifth assignment of error challenges his conviction as being against the manifest weight of the evidence. In particular, defendant contends the manifest weight of the evidence does not support a finding that he knew S.M. was under age 16 or that he was reckless in that regard. As noted previously, the statute at issue, R.C. 2907.04, proscribes sexual conduct between a person over the age of 18 and a person whom the offender either knows to be 13 years of age or older but less than 16 years of age, or is reckless in regard to the victim's age. As such, defendant's knowledge or recklessness as to S.M.'s age is critical.
 {¶ 40} Regarding the weight of the evidence, the Supreme Court of Ohio stated, in Thompkins, supra:
* * * Weight of the evidence concerns "the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greateramount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief.
(Emphasis sic.) Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 41} When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 42} During her direct testimony, S.M. averred that she told defendant, "probably [in] one of [the] e-mails," that she was 15 years old. (Tr. 47.) On cross-examination, S.M. admitted that none of the e-mails comprising State's exhibit No. 1 corroborated her testimony. However, S.M. further testified on cross-examination that she was "pretty sure" she divulged her age to defendant during one of their IM conversations. (Tr. 66-67.) Defendant contends this testimony is patently unworthy of belief due to its equivocal nature.
 {¶ 43} "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. As such, the jury is free to believe all, part, or none of the testimony of the witnesses who appear before it. State v. Green, Franklin App. No. 03AP-813, 2004-Ohio-3697, at ¶ 24. Further, while the jury may note inconsistencies in witness testimony and resolve or discount them accordingly, such inconsistencies do not render a defendant's conviction against the manifest weight of the evidence. Id. In this case, the jury had the opportunity to hear S.M.'s testimony and evaluate her credibility. The jury was free to believe S.M.'s testimony that she divulged her age to defendant prior to their sexual encounter, and the record does not provide any obvious reasons to doubt her credibility.
 {¶ 44} Moreover, even accepting defendant's contention that S.M.'s testimony was incredible, we find that the jury could reasonably have construed other evidence as establishing defendant's recklessness with regard to S.M.'s age. R.C. 2901.22(C) defines "reckless" as follows:
A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 {¶ 45} The record contains uncontroverted evidence that defendant knew that S.M. was a high school student. Indeed, many of the e-mails discuss school events. The jury could reasonably have concluded that S.M.'s status as a high school student should have at least put defendant on notice that S.M. may have been under the age of 16. However, there is nothing in the record to suggest that defendant ever attempted to ascertain S.M.'s age. In addition, defendant warned S.M. in an e-mail that she should apprise him in advance of plans to telephone him because his roommate might answer and tease him about her age. Defendant's comment could reasonably be interpreted by the jury as demonstrating his recognition of S.M.'s young age. From this evidence, the jury could reasonably infer that defendant acted with heedless indifference to the consequences and perversely disregarded a known risk.
 {¶ 46} After a careful review of the record, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding defendant guilty of unlawful sexual conduct with a minor. Accordingly, the fifth assignment of error is not well-taken.
 {¶ 47} For the foregoing reasons, defendant's five assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant, J., concurs.
Petree, J., concurs in judgment only.
Christley, J., retired, of the Eleventh Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] Names of witnesses have been intentionally omitted.