[Cite as *State v. Beatty*, 2026-Ohio-751.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 AP 03 0010 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2024 CR 09 0276 |
| CHRISTOPHER D. BEATTY, | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry: March 4, 2026 |

**BEFORE:** Craig R. Baldwin; Robert G. Montgomery; David M. Gormley, Judges

**APPEARANCES:** KRISTINE W. BEARD, for Plaintiff-Appellee; KIMBERLY KENDALL CORRAL and GABRIELLE M. PLOPLIS, for Defendant-Appellant.

*Montgomery, J.*

**<u>STATEMENT OF THE CASE</u>**

**{¶1}**   This case stems from a home invasion and corresponding attack on an individual, Preston Morrison, and involved four co-defendants: Appellant, Christopher Beatty, (hereinafter "Appellant"), Jared "Will" Soltero ("Soltero"), Henry Wellman ("Wellman"), and Todd Riordan ("Riordan").   Appellant was indicted by the Tuscarawas County Grand Jury for one count of aggravated burglary in violation of R.C. 2911.11(A)(1) a first-degree felony, and one count of felonious assault in violation of R.C. 2903.11(A)(1) a second-degree felony. Appellant pled not guilty.

**{¶2}** On March 11, 2025, the matter proceeded to a jury trial. Prior to the presentation of the evidence, the defense moved for the separation of witnesses and argued that the victims' presence in the courtroom during the proceedings would deny Appellant's right to a fair trial. The Court overruled the motion, and the victims were permitted to remain in the courtroom for the entire proceeding. During trial, the State presented fourteen witnesses, including Officers Bradley Geist, Darren Avon, Chad Dorsey and Ty Norris - from the New Philadelphia Police Department; Tonya Johnson, Miranda Gowins, Nathan Reynolds, co-defendants Wellman and Riordan; and treating physicians Dr. James Belleza and Dr. Kurt Garren; and victims Shandi and Preston Morrison.

**{¶3}** On March 13, 2025, the jury returned its verdict finding Defendant guilty of one count of Aggravated Burglary and one count of Felonious Assault. The State agreed that the Counts were allied offenses of similar import and the State elected to proceed with sentencing for one count of Aggravated Burglary. On March 25, 2025, after making various findings, the court sentenced Defendant to an indefinite prison term of ten to fifteen years. The court advised Defendant regarding post-release control and a period of supervision by the Adult Parole Authority after release from prison is mandatory in this case.[1] This timely appeal followed.

---

[1] In the sentencing Entry, the court notes the following: (1) The victims suffered serious physical, psychological, and economic harm, as there were physical injuries, emotional trauma, and expenses of moving from the crime scene and medical treatment; (2) The offender was out on bail before trial or sentencing on a Harrison County case when the offense was committed; (3) The offender has prior adjudications of delinquency, including Aggravated Felonious Assault, Breaking and Entering, Arson, and Felonious Assault; (4) The offender has a prior history of criminal conviction, including Breaking and Entering (F-5), Grand Theft of Motor Vehicle (F-4), and Persistent Disorderly Conduct, as well as multiple misdemeanor offenses; (5) The offender has prior convictions for felony offenses of violence, including Robbery (F-2) and Felonious Assault.

## STATEMENT OF FACTS

**{¶4}**   On August 20, 2024, the four co-defendants named above, and two additional individuals James Funkhauser and Nathan Reynolds, worked the morning together at TJD Energy Services and at lunchtime, they went to lunch at Buffalo Wild Wings (hereinafter "BW3s") in New Philadelphia, Ohio.  The group arrived in two separate white vans and were served by a waitress named Miranda Gowins ("Gowins").

**{¶5}**   At trial, Gowins described loud and boisterous conversation and heavy drinking at the group's table, with an alcohol tab between $200.00 and $300.00.[2]  At some point, co-defendant Riordan realized that Gowins had previously dated one of the victims, Preston Morrison ("Preston") and brought up the subject to Gowins.[3]  Gowins was in a relationship with Preston for five years and they shared a six-year-old son together. Preston was physically abusive towards Gowins, which the men at the table did not appreciate.  Gowins testified that Preston had been convicted of crimes of violence against her and she even obtained a protection order against him.  Gowins testified that Riordan asked her repeatedly about her previous relationship with Preston and her experiences of past domestic violence with him.  Wellman then sent a Facebook friend request to Preston.

**{¶6}**   When they left BW3s, the men drove the two white trucks towards the Morrison home and eventually arrived across the street from the residence, near West Elementary School.  The school has numerous surveillance cameras that captured the truck's arrival as well as the men exiting the trucks and walking toward the home.

---

[2] The State represented the alcohol bill to be around $300.00; Gowins remembered it as closer to $200.00.

[3] Riordan and Preston also previously worked together at TJD.

Appellant and the three co-defendants approached the residence, while Funkhauser and Reynolds stayed behind and got back in the truck. Wellman knocked on the front door, while Riordan and Appellant were standing on the porch with him.

{¶7} Shandi Morrison ("Shandi") testified she was on a work zoom call at the time she heard a knock on her front door. She looked out her window and saw three men standing on the porch. Shandi asked Preston to answer the door, and she got the dog and went upstairs. A few moments later, Shandi heard someone ask, "Are you Preston?" Shandi testified she instantly knew something was wrong when she heard Preston saying, "What are you doing?" and then heard loud banging. *Tr.*, at p. 337. Shandi saw Preston being hit and struggling to get away. Shandi testified that someone yelled to her "We'll be done soon." *Tr.*, at p. 338. When the men started to leave, Preston ran to the kitchen and grabbed a knife to defend himself. After they left, Shandi ran downstairs and saw Preston hunched over in the kitchen holding a knife with blood everywhere. Shandi observed blood pouring out of his mouth and his ear hanging off his head. *Tr.,* at p. 344. Shandi immediately called 911.

{¶8} Preston himself testified in detail regarding the incident. When Preston answered the door, he saw four men he later identified as Appellant, Riordan, Wellman, and Soltero. Appellant asked if he was Preston and forced his way into the home. Morrison testified Appellant came in first "bull rushed, instantly swinging. Made contact numerous times from the very beginning. I remember specifically my eye just leaking and not being able to see great out of my right eye right away. Chris Beatty was the first one that led the charge". *Tr.*, at pp. 427-28. Preston was then dragged to the bathroom where he and Appellant fell into the tub and got wrapped up in the shower curtain, while two

other men were striking him from other angles. Preston testified that Appellant bit his ear and then struck him with the toilet tank lid twice. *Tr.,* at pp. 430-33. As soon as the co-defendants began to retreat, Preston ran to the kitchen and grabbed a knife to defend himself.

{¶9} Law enforcement and medics quickly arrived at the scene and arranged for Preston to be transported to the hospital. Detectives Chad Dorsey ("Det. Dorsey") and Ty Norris ("Det. Norris") responded to the scene and testified at trial. Det. Dorsey identified photographs of the Morrison residence and crime scene, collected and identified pieces of the broken toilet tank lid used, and collected and identified a silver metal swastika ring that Shandi found in the bathtub after the men left her home.

{¶10} Officer Bradley Geist ("Officer Geist") also responded to the scene. Officer Geist testified that when he arrived, Shandi answered the door and was hysterical, out of breath and in disarray. Officer Geist observed blood throughout the house and stated the bathroom was in disarray. Officer Geist also saw Preston in the kitchen bleeding from his face, and stated he was hysterical, confused, and struggling to communicate. Officer Geist was wearing a body camera and said body camera footage was played for the jury and admitted as evidence without objection.

{¶11} At the hospital, Det. Norris took photographs of Preston's injuries. The photos were shown to the jury and admitted as evidence. Det. Norris also asked Shandi to go through Riordan's Facebook page to try and identify any of the men involved in the assault. Shandi viewed Riordan's Facebook page and his friends list and from there, was able to identify Appellant as one of the assailants. Det. Norris also interviewed the co-defendants and waitress Gowins. Gowins confirmed the events at BW3s prior to the

assault including the fact that Soltero wore a silver ring. Gowins distinctly remembered the ring because it had a swastika emblem on it and because he kept banging it on the restaurant table.

{¶12} Officer Barren Avon ("Officer Avon") also works for the New Philadelphia Police Department and is a school resource officer for West Elementary. Officer Avon collected and identified the surveillance video from the West Elementary School, and the footage was played for the jury and admitted as evidence without objection. The video showed two white trucks pulling up near the school, the passengers exiting the trucks and the four co-defendants walking toward the Morrison home, and eventually the men returning to the trucks and leaving.

{¶13} Co-defendants Wellman, Riordan, and bystander Reynolds all appeared and testified at the trial. All three identified Appellant as a co-defendant in the attack on Preston. Reynolds testified that after leaving BW3s, he got out of the truck and started to walk towards the Morrison home with the others but turned back because he did not want to be involved in "whatever was going on." *Tr.*, at p. 241. Reynolds testified when Appellant came out of the house his shirt was off, and he walked towards a nearby Rite Aid. Reynolds picked up Appellant near the Rite Aid and noticed blood on the outside of his hands. *Tr.*, at p. 246. Reynolds also confirmed that Soltero wears a silver swastika ring.

{¶14} Wellman testified that Appellant led the charge into the home and described Appellant doing "chicken wings" as he approached. Although Wellman did not observe Appellant strike Preston, he knew something was happening with Appellant and Riordan when he heard Preston stating "Todd, Todd, Todd, you see me, you know me, Todd,

Todd, Todd, what are you guys doing." *Tr.*, at p. 209-10. Wellman testified Preston was "pleading and you [could] definitely hear the distress out of the tone of his [Preston's] voice." *Tr.*, at p. 210.

{¶15} Riordan also testified for the State. In exchange for his testimony, he pled guilty to felonious assault for an agreement to serve five years in prison, with judicial release after six months. Riordan confirmed that Preston's name came up in conversation as the group had drinks at BW3s as having dated Gowins. Riordan testified he rode with Appellant, who drove them to the Morrison home. Although Riordan stated his memory was "foggy" due to the amount of alcohol he consumed that day, he testified Appellant forced his way into the Morrison home, grabbed Preston, and started to punch him. As a result of the attack, Preston suffered significant injuries including stitches, numerous lacerations, and even surgery to reattach his ear.

## ASSIGNMENTS OF ERROR

{¶16} "I. ASSIGNMENT OF ERROR I: THE TRIAL COURT ERRED IN PERMITTING WITNESS PRESENCE DURING TRIAL TESTIMONY OVER DEFENSE OBJECTION."

{¶17} "II. ASSIGNMENT OF ERROR II: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR EXCLUSION OF SUGGESTIVE PHOTOGRAPHIC LINEUP."

{¶18} "III. ASSIGNMENT OF ERROR III: THE TRIAL [SIC] ERRED FOR PERMITTING THE STATE TO INTRODUCE EVIDENCE WITHOUT LAYING THE PROPER FOUNDATION, INCLUDING IMPEACHMENT AND BOLSTERING OF ITS OWN WITNESS."

{¶19} "IV. ASSIGNMENT OF ERROR IV: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE USE OF PREJUDICIAL TERMS 'VICTIM' AND 'FELONIOUS ASSAULT' TO DESCRIBE THE COMPLAINING WITNESS AND ALLEGED CONDUCT."

{¶20} "V. ASSIGNMENT OF ERROR V: THE TRIAL COURT ERRED IN PERMITTING INTRODUCTION OF UNAUTHENTICATED VIDEO EVIDENCE."

**{¶21}** "VI. ASSIGNMENT OF ERROR VI: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO IMPROPER IDENTIFICATION AND NARRATIVE TESTIMONY."

**{¶22}** "VII. ASSIGNMENT OF ERROR VII: THE TRIAL COURT WAS DIVESTED OF JURISDICTION AFTER IT FAILED TO BRING THE DEFENDANT TO TRIAL IN 90 DAYS, RENDERING APPELLANT'S CONVICTIONS VOID."

**{¶23}** "VIII. ASSIGNMENT OF ERROR VIII: THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT FOR REPEATED COMMENTARY ON CO-DEFENDANT'S SIZE IN CLOSING ARGUMENTS."

**{¶24}** "IX. ASSIGNMENT OF ERROR IX: THE TRIAL COURT ERRED IN PERMITTING INTRODUCTION OF OVERLY PREJUDICIAL EVIDENCE THAT APPELLANT'S CO-DEFENDANT WORE A SWASTIKA RING."

**{¶25}** "X. ASSIGNMENT OF ERROR X: THE CUMULATIVE EFFECT OF MULTIPLE ERRORS DEPRIVED APPELLANT OF HIS CONSTITUTIONALLY GUARANTEED RIGHT TO A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITUTION."

## ANALYSIS

### *Victim's Presence During Trial*

**{¶26}** In the first assignment of error, Appellant argues the trial court erred by allowing the victims to be present in the courtroom during the entire trial. Appellant claims that because the victims testified last, there is a strong likelihood they altered their testimony based on the evidence presented, thereby denying Appellant a fair trial. We disagree.

**{¶27}** A trial court's decision to allow a victim to remain in the courtroom during trial is within the court's sound discretion. *State v. Klusty*, 2015-Ohio-2843, ¶¶ 31-32 (5th Dist.), citing *State v. Maley*, 2013-Ohio-3452 (1st Dist.). A reviewing court will not reverse a trial court's decision to allow a victim to remain in the courtroom during testimony unless the trial court abused its discretion. *State v. Pickett*, 2016-Ohio-4593, ¶ 15 (4th Dist.). An

abuse of discretion is more than a mere error of law or judgment. It implies the court's decision was arbitrary, unreasonable, or unconscionable. *Id.*

**{¶28}** A victim has a constitutional and statutory right to be present during the trial unless the court determines that exclusion of the victim is necessary to protect the defendant's right to a fair trial. Ohio Const. art. 1, § 10(a); R.C. 2930.09. Ohio Const. art. 1, § 10(a) specifically provides victims constitutional rights to reasonable and appropriate notice, information, access, and protection and to a meaningful role in the criminal justice process. In enacting R.C. 2930.09, the Ohio Legislature specifically recognized that it is difficult to have a meaningful role in the criminal justice process if the victim is banished from the courtroom. *See State v. Ricco*, 2009-Ohio-5894, ¶ 27 (11th Dist.).

R.C. 2930.09, also known as Marsy's law, provides in relevant part:

A victim in a case may be present whenever the defendant or alleged juvenile offender in the case is present during any stage of the case against the defendant or alleged juvenile offender that is conducted on the record, * * * unless the court determines that exclusion of the victim is necessary to protect the defendant's or alleged juvenile offender's right to a fair trial or to a fair delinquency proceeding. * * *

Furthermore, Evid.R. 615 makes clear that even when there is a separation of witnesses, the victim has the right to be present in accordance with the criminal statutes. *Ricco*, at ¶ 23. Evid.R. 615 provides:

(A) Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.

An order directing the "exclusion" or "separation" of witnesses or the like, in general terms without specification of other or additional limitations, is effective only to require the exclusion of witnesses from the hearing during the testimony of other witnesses.

(B) This rule does not authorize exclusion of any of the following persons from the hearing:

* * *

(4) in a criminal proceeding, a victim of the charged offense to the extent that the victim's presence is authorized by statute enacted by the General Assembly. As used in this rule, "victim" has the same meaning as in the provisions of the Ohio Constitution providing rights for victims of crimes.

{¶29} Importantly, the defendant claiming error on appeal must establish that the presence of the victim compromised the defendant's right to a fair trial, requiring more than a vague assertion or generalized claim of prejudice. *Ricco,* at ¶ 27; *State v. Klusty*, 2015-Ohio-2843, ¶ 32 (5th Dist.). A defendant "must present particularized evidence that the victim's testimony will be so affected by the victim's presence during the testimony of other witnesses that her right to a fair trial would be violated. General assertions that it is possible are insufficient." *Pickett*, at ¶ 18, citing *State v. Maley*, 2013-Ohio-3452, ¶ 7 (1st Dist.).

{¶30} Here, Appellant cannot present "particularized evidence" that the victims' respective testimony was so influenced or affected by their presence in the courtroom during trial. To the contrary, each victim offered testimony based on their own personal observations and actual experience on the day in question. Their testimony was specific

as to certain details that only they could provide based on their observations. Shandi observed the men standing on her porch, heard someone yell "we'll be done soon" and saw some of the attack on Preston, as well as his resulting injuries. Preston was the one being attacked and clearly had personal knowledge of the facts to which he testified. Defense counsel fully cross-examined each victim to test their recollection as well as draw out potential inconsistencies.

{¶31} There is nothing to suggest their testimony was influenced by any other witness, including each other's testimony, or that Appellant's trial was unfair because Shandi and Preston were permitted to stay. Indeed, the evidence presented by the State and against Appellant is significant. Video footage placed Appellant near the Morrison home, multiple witnesses place Appellant at the home, and at BW3s prior to the crime, and multiple witnesses confirmed that Appellant "led the charge" into the Morrison home. Because Appellant cannot demonstrate actual prejudice to him resulting in an unfair trial, the trial court did not abuse its discretion in allowing the victims to remain in the courtroom. **Appellant's first assignment of error is overruled.**

### *Ineffective Assistance of Counsel*

{¶32} Appellant's second, fourth, and sixth assignments of error argue that defense counsel was ineffective and fell below the standard of representation guaranteed by the Sixth Amendment. Because these assignments of error must be analyzed under the same standard, we address them together.

{¶33} The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984), and reiterated by this court in *Mansfield v. Studer,* 2012-Ohio-4840 (5th Dist.):

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364 (1993); *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111 (2009).

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, at 689. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.*

*Studer,* at ¶¶ 58-61.

**{¶34}** Thus, to prevail on an ineffective assistance of counsel argument, appellant must establish two prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a "substantial violation" of an essential duty to appellant. *Studer,* at ¶¶ 58-61. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.*; *Strickland*, at 687. Second, appellant must demonstrate

actual prejudice by such alleged ineffectiveness. There must be a reasonable probability that *but for* counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, at 691-696. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. *Strickland*, at 690.

{¶35} In the second assignment of error, Appellant argues that counsel was ineffective for failing to object to the admission of the photographic lineup because it was impermissibly suggestive. Appellant claims it was suggestive because Appellant was about 15 pounds heavier than the other men pictured. Identification testimony tainted by an unduly suggestive identification procedure may be suppressed. *State v. Keene*, 1996 Ohio App. Lexis 4048, *121-22 (2d Dist.). "A lineup is unduly suggestive if it steers the witness to one suspect, independent of the witness's honest recollection." *State v. Adams,* 2015-Ohio-3954, ¶ 208.

{¶36} However, even if an identification procedure is unduly suggestive, the identification testimony derived therefrom is not per se inadmissible where the identification remains reliable. Indeed, reliability of the identification is the linchpin in determining its admissibility. *Id*., citing *Manson v. Brathwaite* (1977), 432 U.S. 98 (1977). Thus, if the identification itself is reliable, it is admissible despite the suggestive nature of the identification procedure (e.g. lineup photo). *Keene*, supra, citing *Neil v. Biggers,* 409 U.S. 188 (1972)*; State v. Moody* (1978), 55 Ohio St.2d 64 (1978) (other citations omitted).

{¶37} In this case, Officer Anthony Pellegrino from the Dover City Police Department (a department that routinely assists the New Philadelphia Police Department) independently prepared the photo array and testified that he used OHLEG to find pictures

of men with similar characteristics to Appellant. Appellant's bald assertion that the lineup was unduly suggestive due to Appellant's weight difference is insufficient to demonstrate "undue" suggestiveness. Even if it was somehow suggestive, the identification remains reliable and was properly admitted. Both Shandi and Preston identified Appellant as an assailant based on their own personal knowledge, as well as from Facebook images. Without question, Preston got a good look at the individual who forcefully entered his home and started beating him. Preston also identified Appellant as the one who struck him with the toilet lid (breaking that lid), and the one who bit his ear. Because the identification was reliable, defense counsel was not ineffective for failing to object to the introduction of the photo array as being impermissibly suggestive.

{¶38} In the fourth assignment of error, Appellant claims counsel was ineffective because he failed to object to the use of prejudicial terms such as "victim" and "felonious assault." However, there is nothing to suggest that these terms influenced the jury in reaching its verdict. Rather, the jury determined that the State proved the elements of each offense after listening to 14 witnesses' testimony, viewing numerous exhibits, and listening to counsel's arguments as well as proper jury instructions. The court specifically instructed the jurors that Appellant was presumed innocent, that the defendant must be acquitted unless the state produces evidence which convinces the jury beyond a reasonable doubt of every essential element of the offenses charged in the indictment, and that the evidence does not include opening or closing arguments of counsel and/or any questions by counsel. This Court will not second guess defense counsel's strategy in failing to object every time a certain word was used that Appellant did not like. There

is no reasonable probability that the outcome of the trial would have been different had counsel objected.

**{¶39}** In the sixth assignment of error, Appellant maintains counsel was ineffective for failing to object to certain identification video evidence and narrative testimony. Appellant appears to argue that Officer Avon and Reynolds did not have first-hand knowledge of what was occurring in the video footage and/or were not qualified to identify the people appearing in the footage. However, the record belies Appellant's contention.

**{¶40}** Pursuant to Evid.R. 701, courts allow identification testimony from videos where the evidence is based on the perception of the witness and is helpful to determine a fact at issue. *State v. Tomlinson,* 2022-Ohio-2575 (8th Dist.). Here, Officer Avon and Reynolds testified <u>only</u> to what they observed in the video on the day in question based on personal knowledge. More specifically, Officer Avon was the custodian of the video footage and simply testified that two white trucks appeared in the video and several men exited those same trucks. Officer Avon did <u>not</u> identify the white truck as being used in the offense nor did Officer Avon identify Appellant in any manner. Similarly, Reynolds watched the footage and identified the truck as being a Dodge Cummins and identified himself as being in the video. He testified that there were six men in the video but did not identify Appellant as a person in the video. Reynolds only testified that when he stopped at a stop sign, as seen in the video, Appellant told him to meet him at Rite Aid. As such, counsel was not ineffective for failing to object to the identification video evidence or testimony.

**{¶41}** To be clear, none of the alleged errors by defense counsel are sufficient to rise to the level of ineffective assistance of counsel as set forth in *Strickland*, supra.

Counsel's performance did not fall below an objective standard of reasonable representation and there is no reasonable probability that the outcome of Appellant's trial would have been different but for the alleged errors. To the contrary, the record demonstrates that defense counsel fully cross-examined each State witness, pointed out inconsistencies in testimony, attempted to portray Appellant as more of a bystander in the situation, and overall, zealously advocated for Appellant. Thus, **Appellant's second, fourth, and sixth assignments of error are overruled in their entirety.**

### *Improper Admittance of Documentary Evidence*

**{¶42}** In the third assignment of error, Appellant claims the state engaged in "improper bolstering" of Gowins during her testimony. The state introduced a statement made by Gowins to her attorney regarding her visitation agreement with Preston. *Appellant's Brief*, at p. 16. Appellant also claims the trial court made Gowins "more credible" by introducing Gowins' prior consistent written statement to police. Appellant argues the documents were irrelevant and that no proper foundation was laid.

**{¶43}** A review of the transcript reveals that there was no objection to the line of questioning at trial and no objection to either document. Because Appellant failed to raise the issue in the trial court when the court could have corrected any error, he has forfeited all but plain error for purposes of appeal. *State* v. *Warner*, 2025-Ohio-667, ¶ 21 (5th Dist.). In *Warner*, this Court stated:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights," notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. Notice of plain error, pursuant to Crim.R. 52(B), "is to be taken with the

utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). An error affects substantial rights only if it changes the outcome of the trial. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶64, 89 N.E.3d 554.

*Warner,* at ¶ 22.

{¶44} Thus, Appellant must establish that (1) an error occurred; (2) the error was obvious; and (3) there is a reasonable *probability* that the error resulted in prejudice. *Id.*, at ¶ 23, citing *State v. Bailey*, 2022-Ohio-4407 (stating that the elements of the plain-error doctrine are conjunctive; all three must apply to justify an appellate court's intervention).

{¶45} Here, Appellant cannot establish a reasonable probability that any error resulted in actual prejudice to him. Gowins testified regarding her relationship with Preston, the very fact that apparently influenced the co-defendants to go attack Preston. Gowins simply reiterated that she and Preston had a son together and Preston enjoyed companionship pursuant to their shared parenting agreement. The agreement was merely an extension of her testimony. Regarding her written statement to police, Gowins testified that what she wrote in her statement was consistent with her testimony on the stand. There was simply no prejudice to Appellant. Because Appellant cannot demonstrate the results of the trial would have been different had the evidence been excluded, the court will not recognize plain error. **Appellant's third assignment of error is overruled.**

### *Authentication of Video Evidence*

**{¶46}** In his fifth assignment of error, Appellant claims video footage from West Elementary School, State's Exhibit C, was not properly authenticated because it had no date or time stamp on it. Appellant claims that because it was not properly authenticated, neither Officer Avon nor witness Reynolds properly testified regarding what they saw in the video. Again, there was no objection at trial to the admission of the evidence and Appellant cannot demonstrate plain error. *Even assuming* a proper objection, the video was properly authenticated prior to its admission.

**{¶47}** The admission of evidence is within the sound discretion of the trial court and will only be reversed upon a showing that the court abused that discretion. *State v. Heineman*, 2021-Ohio-643, ¶ 8 (3d Dist.), citing *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299 (1992). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Heineman*, supra; Evid.R. 901(A). "One way to authenticate evidence is to have a witness with knowledge of said evidence testify to what it is." *Id.*, citing Evid.R. 901(B)(1).

**{¶48}** Here, the record demonstrates that Officer Avon properly authenticated the video. Officer Avon is a school resource officer for West Elementary and has personal knowledge of the surveillance cameras surrounding the school. Officer Avon identified the video footage at trial as coming directly from one of the West Elementary School surveillance cameras. The fact that the footage did not have a date or time stamp on it is simply insufficient to overcome Officer Avon's knowledge of the evidence. Officer Avon further confirmed the footage played to the jury was a "true and accurate copy of the video

footage" relative to this specific case. *Tr.*, at p. 134-35. Because the video footage was properly authenticated, **Appellant's fifth assignment of error is overruled.**

### *Right to a Speedy Trial*

{¶49} In the seventh assignment of error, Appellant argues he was denied his right to a speedy trial pursuant to R.C. 2945.72(H). Specifically, Appellant argues that he was being held in Harrison County on the same charges as those from Tuscarawas County. Appellant claims that bond was revoked in Harrison County solely because of the charges in this case and thus, they are the "same" charges for speedy trial purposes. As a result, Appellant asserts that his speedy trial time expired on November 26, 2024. Appellant's argument is without merit.

{¶50} A speedy trial claim involves a mixed question of law and fact. *State v. Ingram*, 2017-Ohio-5685, ¶ 22 (6th Dist.). An appellate court must accept as true any facts found by the trial court and supported by competent, credible evidence. *Id.* However, as to legal issues, the appellate court must apply a de novo standard and therefore freely review the trial court's application of law to the facts. *Id.*

{¶51} The right to a speedy trial is encompassed within the Sixth Amendment to the United States Constitution. It is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197 (1978); *State v. Pachay*, 64 Ohio St.2d 218 (1980). "Ohio's speedy trial statutes codify the constitutional guarantee of a speedy trial." *State v. Lichtenwalter*, 2021-Ohio-1394, ¶ 35 (5th Dist.); R.C. 2945.71, *et seq.* The statutes impose a duty on the state to bring a defendant to trial within a specified time frame *unless* the defendant has waived his rights to a speedy trial. *State v. King*, 70 Ohio St.3d 158, 160 (1994). The Ohio Supreme Court has stated that

Ohio's statutory speedy trial provisions are "coextensive with the constitutional speedy trial provisions."

**{¶52}** Pursuant to R.C. 2945.71(C)(2), the State must bring a defendant arrested on felony charges to trial within 270 days of his arrest. When calculating speedy-trial time, courts ordinarily count each day during which the accused is held in jail in lieu of bail on the pending charge as three days, known as the 3 for 1 or the triple-count provision. R.C. 2945.71(E). Importantly, the triple-count provision applies to an individual held in jail in lieu of bond <u>solely</u> on the pending charges. *State v. MacDonald,* 48 Ohio St.2d 66 (1976), paragraph two of the syllabus; *State* v. *Ladd*, 56 Ohio St.2d 197 (1978).

**{¶53}** In *Ladd*, the Supreme Court applied the *MacDonald* case to determine if the triple-count provision applied when a defendant was held in jail on multiple state charges, charged at different times resulting in two separate indictments and two separate trial dates. The court determined the triple-count provision was inapplicable to the time when the defendant was held on both the pending rape charge and the unauthorized use of a motor vehicle charge. *Ladd*, at 203. The Court stated:

> Surely a defendant held on several charges within the same jurisdiction for
>
> activities constituting a personal crime wave cannot be allowed to put the
>
> state into a position of having to try him on each count within 90 days.
>
> *Id.*

**{¶54}** Thus, a defendant facing more than one "pending charge" is not entitled to the triple-count provision. *See State v. Parker*, 2007-Ohio-1534, ¶ 10; In other words, a defendant is not entitled to the triple-count provision if the State issues a subsequent indictment that contains additional criminal charges that "arise from facts different from

the original charges" or from facts the State did not know at the time of the initial indictment. *State v. Wyant,* 2026-Ohio-102, ¶ 17 (4th Dist.) (holding that where appellant was charged in two separate indictments - one for drug offenses in August 2023 and the second for tampering with evidence and vandalism in June 2024 - the charges were separate, and the triple-count provision did not apply). In this situation, the defendant is not being held in jail solely on the pending charge. *Id.*; *State v. Baker*, 1997-Ohio-227, syllabus (triple-count provision doesn't apply when a separate subsequent indictment contains charges from different facts).

{¶55} Conversely, when a defendant is held in jail on multiple charges in a single indictment, courts have applied the triple-count provision. *State v. Bowman*, 41 Ohio App.3d 318, 323 (1987) (distinguishing *MacDonald* and *Ladd* because appellant was charged with multiple counts under a single indictment and all counts were tried in a single trial); See, *e.g., State* v. *Bickerstaff*, 10 Ohio St.3d 62 (1984) (indicted on three counts of aggravated robbery and three counts of aggravated murder in single indictment); *State* v. *Singer*, 50 Ohio St.2d 103 (1977); *State v. Parker* (multiple charges from a criminal incident with common litigation history constitute incarceration on the 'pending charge').

{¶56} Here, Appellant was indicted in Harrison County on January 12, 2024, for Felonious Assault, Aggravated Assault, and Domestic Violence. These charges are separate and distinct from the charges in the instant case. Appellant committed the instant offense nearly eight months later, on August 20, 2024, and was arrested for said offense on August 27, 2024. On August 29, 2024, Harrison County moved to revoke Appellant's bond and issued a warrant for his arrest. The Harrison County warrant remained in effect while this case was pending. Because Appellant was being held for

separate, unrelated charges in Harrison County, the triple-count provision does not apply. As such, Appellant was brought to trial within 200 days of his arrest on the instant charges, well within the 270-day deadline for trial. **Appellant's seventh assignment of error is overruled.**

### *Prosecutorial Misconduct*

**{¶57}** In the eighth assignment of error, Appellant claims the prosecutor's comments regarding Appellant's "size" during closing arguments constituted prosecutorial misconduct. Again, we disagree with Appellant.

**{¶58}** The prosecution enjoys wide latitude during opening and closing statements. *State v. Gilbert*, 2005-Ohio-5536, ¶ 13 (10th Dist.). The test for prosecutorial misconduct is, first, whether the conduct is improper, and second, whether the conduct prejudicially affected the substantial rights of the accused. *State v. McConnell*, 2023-Ohio-654, ¶ 34 (5th Dist.), citing *Vill. of Sunbury v. Sullivan*, 2012-Ohio-3699, ¶ 30 (5th Dist.), citing *State v. Lott*, 51 Ohio St.3d 160 (1990). In reviewing allegations of prosecutorial misconduct, an appellate court must consider the conduct complained of in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168 (1986).

**{¶59}** A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper conduct. *State v. Treesh*, 2001-Ohio-4; *State v. White,* 1998-Ohio-363; *State v. Saleh,* 2009-Ohio-1542, ¶ 66 (10th Dist.). In other words, "a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the

same regardless of evidence admitted erroneously." *State v. Hicks*, 2011-Ohio-3578, ¶ 30 (8th Dist. 2011), *citing State v. Williams*, 38 Ohio St.3d 346, 349-350 (1988).

**{¶60}** Here, the prosecutor's comments were not objectionable in the first instance. The prosecutor was simply noting the circumstances Preston faced during his attack and his inability to defend himself. Such comments are not unusual when describing a specific incident and squarely fit within the prosecutor's wide latitude. Further, the prosecutor's comments did not prejudicially affect Appellant's substantial rights. The court instructed the jury that both opening statements and closing arguments are not evidence and that the State must prove each element of the crime beyond a reasonable doubt. *State v. Fannon*, 2018-Ohio-5242, ¶ 58 (4th Dist.), citing *Gilbert*, supra. The evidence against Appellant in this case is significant and without question the outcome of the case would have been the same regardless of the prosecutor's comments regarding Appellant's "size" during closing arguments. See *State v. McConnell*, 2023-Ohio-654 (5th Dist.). **Appellant's eighth assignment of error is overruled.**

### *Admission of Swastika Ring*

**{¶61}** In his ninth assignment of error, Appellant argues that the introduction of the silver swastika ring found at the scene belonging to Soltero was overly prejudicial and should not have been admitted. Again, however, Appellant did not object to this evidence during trial and the Court must conduct a plain error analysis. We conclude the admission of the ring does not rise to the level of plain error.

**{¶62}** Generally, Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." In reaching a decision

involving admissibility under Evid.R. 403(A), a trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect. *State v. Perrine,* 2024-Ohio-6082, ¶ 21 (5th Dist.); *State v. Timms,* 2022-Ohio-3010, ¶ 50 (5th Dist.). Further, in this case, Appellant was charged with aiding and abetting three other men in the commission of a felonious assault. Gowins noticed earlier that day at BW3s that Soltero was banging his ring on the table, a ring that was quite distinct to her because of the swastika emblem. That same ring was later recovered from the Morrisons' bathtub where a portion of the attack on Preston occurred. Reynolds confirmed that the silver ring with the Swastika emblem belonged to Soltero. The ring's distinguishing feature was clearly more probative than it was prejudicial such that it was properly admitted, and no plain error exists. **Appellant's ninth assignment of error is overruled.**

### *Cumulative Error Doctrine*

**{¶63}** In the tenth assignment of error, Appellant argues that the cumulative effect of each of the claimed errors in this appeal deprived him of a fair trial. Under the cumulative-error doctrine; "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner,* 74 Ohio St.3d 49, 64 (1995), citing *State v. DeMarco,* 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. However, the cumulative error doctrine does not apply if a defendant cannot demonstrate multiple instances of harmless error. *State v. Mammone,* 2014-Ohio-1942, ¶ 148.

**{¶64}** Here, Appellant's arguments regarding trial errors are completely without merit. A review of the trial transcripts in this case reveals that without question, Appellant received a fair trial with an impartial judge and more than adequate representation by counsel. The facts are the facts. Appellant drank a significant amount of alcohol on the day in question, and he and his coworkers decided to go invade the Morrison home for no reason and beat Preston Morrison to the point of significant injuries, including reattachment of his ear. There is simply nothing to suggest that any cumulative effect of errors in the trial deprived Appellant of his constitutional right to a fair trial. **Appellant's tenth assignment of error is overruled.**

## CONCLUSION

**{¶65}** Appellant's ten (10) assignments of error are overruled in their entirety, and the judgment of the Tuscarawas County Court of Common Pleas is AFFIRMED in all respects.

**{¶66}** Costs to Appellant.

By: Montgomery, J.
Baldwin, P.J. and
Gormley, J. concur.